## CHICAGO, R. I. & P. RY. CO. v. HOWE-McCURTAIN COAL & COKE CO.

No. 16438—Opinion Filed March 16, 1926.

Rehearing Denied July 13, 1926.

**1. Commerce — Rate Regulation — Nature and Effect of Orders by Interstate Commerce Commission.**

The action of the Interstate Commerce Commission is legislative, or administrative, in making rates and charges. The order of the Commission fixing rates and charges for transportation have the effect of legislative acts, and is the law determining the rights of the parties involved in the controversy.

**2. Same—Courts — Enforcement of Rights Created by Commission.**

The enforcement and protection of the lawful rights created by the Interstate Commerce Commission is a judicial function for courts of competent jurisdiction.

**3. Same—Distinctive Jurisdictions of Commission and Courts.**

Under the Interstate Commerce Acts, if the lawfulness or unlawfulness of the charge or service depends upon its being reasonable or unreasonable, just or unjust, the determination of the matter involves the trial of an issue of fact. The Interstate Commerce Commission is the exclusive trier of the question of fact so made. If there then remains a question among the parties, it goes to the court for protection and enforcement as a judicial matter.

**4. Same—Freight Rates.**

If there be no issue of fact involved in the charge or controversy between the shipper and carrier as to its reasonableness or unreasonableness, the question is one for trial by a court of competent jurisdiction, and not a question for the Interstate Commerce Commission, as the function of the latter is to try and settle issues or questions of fact, which relate to the reasonableness or unreasonableness of the charge or service.

**5. Same — Recovery Against Railroad for Switching Cars from Coal Mine Sustained.**

Record examined; held, to be sufficient to support judgment in favor of the plaintiff.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, LeFlore County; E. F. Lester, Judge.

Action by Howe-McCurtain Coal & Coke Company against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. R. Bleakmore, W. F. Collins, A. T. Boys, and John Barry, for plaintiff in error.

E. F. Maley, for defendant in error.

Opinion by STEPHENSON, C. The Howe-McCurtain Coal & Coke Company commenced its action against the carrier to recover reasonable charges for switching cars of coal from the mines of the plaintiff to the station of the defendant at Howe, Okla. The mines of the plaintiff were situated on Potter's Spur, a distance of about three miles from the station of Howe. The plaintiff purchased the mining property from the McConnell-Deignan Coal Company in the year 1918. The carrier switched the cars from the mines to the station for the McConnell-Deignan Coal Company. The record does not show whether the tariff rate from the station included a charge for switching the cars from the mouth of the mine to the station. The carrier's line was under federal administration when the plaintiff purchased the mining property. The evidence discloses that the plaintiff proposed to lease the spur from the Director General, and furnish its motive power to do its own switching. The plaintiff offered to enter into such an arrangement for a period of five years. The plaintiff signed a written lease tendered to him by the Director General, and returned the same to the latter. The plaintiff purchased an engine and switched the cars of coal from the mines to the station, apparently pursuant to the terms of the written lease which he had signed. The plaintiff also paid the first annual rental contemplated by the proposed lease. The Director General refused to complete the execution of the written lease, and sent a written form of license to the plaintiff for acceptance by the latter, in lieu of the proposed lease. The plaintiff refused to receive and hold the property under the terms of the written form of license tendered to him. The plaintiff expended sums of money for the repair of the spur track, and switched its cars of coal from the mouth of the mines to the station at Howe. Ninety per cent. of the coal involved in this case was shipped to interstate points, and is controlled by the Interstate Commerce Acts. The plaintiff recovered a judgment in an action against the Director General in the United

States District Court for the Eastern District of Oklahoma, for the sum of money paid as rental on the proposed lease, for repairs to the spur track, and for switching the cars of coal from the mouth of the mine to the station during federal control. The federal court found that the plaintiff and the Director General did not enter into a lease contract for the spur track, and for its maintenance by the plaintiff. The evidence of the plaintiff is to the effect that it requested the defendant to do the switching after the latter took over the operation of the lines from the federal government. The evidence of the plaintiff is that one of the managing officers directed the plaintiff to do the switching, and that the carrier would compensate the plaintiff for such services, if it was found that it was the carrier's duty to do the switching. The plaintiff switched 134 cars of coal from the mine to the station at Howe from the 1st of March to April 25, 1920. It appears that about the latter date the carrier refused to pay plaintiff for the switching services, and declined to offer compensation to the plaintiff for further switching service. The plaintiff refused to do further switching service, and the carrier thereupon commenced doing the switching services, and continued to meet the requirements of the plaintiff in this respect. The carrier refused to compensate the plaintiff for the switching service from March 1st to April 25th, and the latter commenced its action against the carrier for reasonable compensation for the services.

The defendant filed its answer, wherein it was first said that the court did not have jurisdiction of the subject-matter of the action; that the court was without jurisdiction to determine the compensation which the plaintiff was entitled to recover for the services. The answer further set forth that the power to fix the charges for the services was with the Interstate Commerce Commission in relation to interstate shipments; and with the Corporation Commission for the intrastate services.

The answer did not plead sufficient facts to show that the court did not have jurisdiction to try the action commenced by the plaintiff. If the court did not have jurisdiction of the subject-matter of this action, it must appear from the evidence. What is said in relation to the failure of the evidence to show a want of jurisdiction in the court over the subject-matter, will make clear the reasons why the answer failed to show a lack of jurisdiction. The answer pleaded a set-off against the plaintiff for alleged rentals due the defendant for a per-

iod of time commencing on March 1st and ending on April 25, 1920. The set-off is based on the assumption that the plaintiff was holding the spur track under a lease entered into between the Director General of Railways and the plaintiff.

The plaintiff filed its reply to the set-off and pleaded the judgment secured against the Director General in the federal court, as a bar to the matters alleged by the defendant to support its set-off. The trial of the cause resulted in judgment for the plaintiff, and a denial of the set-off for rental. The defendant has appealed the cause and assigns as error for reversal: (1) That the witness Martin was not sufficiently qualified to testify as to what would be a reasonable charge for the switching services. (2) That the court was without jurisdiction of the subject-matter, and was not authorized to determine the charges that might be due the plaintiff for the switching services. (3) That the action between the plaintiff and Director General did not bind the defendant, and that the judgment reached therein is not a bar in this action of its right of recovery for rental charges.

Under the Interstate Commerce Acts, if the lawfulness, or unlawfulness, of the charge or service depends upon its being reasonable or unreasonable, just or unjust, the determination of the matter involves the trial of an issue of fact. It was necessary to place the trial of the issue of fact, which entered into the lawfulness or unlawfulness of the charge or service, under the exclusive jurisdiction of one body, in order to bring about a uniformity of rates and charges for transportation services. The purpose of the enactment of the Interstate Commerce Acts, and the establishment of the Interstate Commerce Commission, was to bring about a uniform charge for like services, to like classes of shippers, throughout the United States. If the action be founded upon alleged discrimination among shippers receiving the same class of service, or if the charge made either by the shipper or the carrier is claimed by the adverse party to be unreasonable, the determination of the question involves the trial of the question of fact as to its reasonableness. It will require evidence to determine the question, where the reasonableness or unreasonableness of the charge or service is made an issue. If it were left to the courts to hear evidence as to the reasonableness or unreasonableness of the charge or service, the verdicts of juries would vary on the same state of facts, in the several courts in which the question was tried. This result would defeat the uniformity

intended to be effected by the Interstate Commerce Commission, in performing its duties under the Interstate Commerce Acts.

If the reasonableness of the charge, or the service, be not questioned by the carrier, and it be admitted that the shipper, or consignee, ought to pay the charge, or it be admitted that the carrier committed a breach in failing to perform the service, the right of the plaintiff to recover is one of law, and the amount of damages for the breach is a question of fact for the jury. The action of the Interstate Commerce Commission in fixing rates, charges, and requiring service, is administrative, or legislative, and not judicial. In the latter illustration, the question of fact which would concern the Interstate Commerce Commission, in order to bring about a uniformity of rates, is removed. If there be no issue of fact involved in the right of the plaintiff to maintain his action, the right is founded in law, and the determination of that question is a judicial question. The settlement of the latter question lies with the courts, and not the Interstate Commerce Commission. The orders or rates fixed by the Interstate Commerce Commission, relating to rates, or service, have the effect of legislative acts. The fixing of a rate, or the making of an order, in relation to charges, or service, resulting from a controversy among parties, rests upon the determination of an issue of fact, resolved in favor of the order or rate by the Commission. The enforcement of the law, so made by the Interstate Commerce Commission, is under the jurisdiction of the court. It is for courts of competent jurisdiction to determine whether the defendant has breached or violated a law made by the Commission. If the facts be undisputed the question is one of law for the court. If there be issues of fact between the parties in relation to the alleged breach of the order, or rate, and the extent of damages, the issues in this respect are for trial by the jury. It is not every issue of fact involved in a rate, or order, or in connection therewith, that must be tried by the Interstate Commerce Commission. It is only the issues of fact that enter into the lawfulness or unlawfulness of the charge or service, when this is made to depend on the reasonableness or unreasonableness of the charge or service. The Interstate Commerce Commission is the exclusive trier of the latter issue of fact. This is required by the Interstate Commerce Acts, in order to give uniformity to rates, charges, and service. Mitchell Coal & Coke Co. v. Penn. Ry. Co., 230 U. S. 247; Penn. Ry. Co. v. International Coal & Mining Co., 230 U. S. 184.

The right of the plaintiff to recover for the switching service depends in the first instance on the fact that it was the duty of the carrier to perform such service for the plaintiff. The duty of the carrier to perform the switching service for the plaintiff presupposes the fact that the coal rate from the station of Howe included a charge to compensate the carrier for switching the cars of coal from the mouth of the mine to the station. There is no question as to the sufficiency of the evidence to support the judgment in favor of the plaintiff, aside from the question of jurisdiction, except that it is claimed that the witness Martin was not sufficiently qualified to testify as to the value of the services. This question goes to the probative force of Martin's testimony to prove the charge. The effect of attacking the evidence, merely on the ground of its probative force, is an admission, in effect, that testimony of qualified witnesses was competent, aside from the question of the jurisdiction of the court.

The judgment of the court is not attacked on the ground of a failure to prove a cause of action, or that the evidence is not sufficient to support the judgment. This places the plaintiff in error in the attitude of meeting this appeal as if the plaintiff had a right to recover for the service, provided the witnesses were qualified to testify as to the value of the service. This situation presupposes that the carrier owed the duty, in the first instance, to switch the cars from the mouth of the mine to the station, and that the tariff rate from the station at Howe included a charge for the switching service from the mouth of the mine to the station.

The witness Wright spent several years in the rate department of several railways; he was assistant to the vice president of one of the trunk lines for a considerable period of time. His services with the latter road related mainly to the study of rates and rate-making. The witness was president of a short line of railway for a considerable period of time, which handled the transportation of freight. This witness was fully qualified to testify as to what constituted a reasonable charge for such switching service. The witness Wright testified that a charge of $12 for switching the empty cars from the station to the mines, and switching the loaded cars back to the station, a distance of about three miles, was a reasonable charge.

The cause was tried to the court without a jury, and recovery was allowed on the basis of $10 per car. The plaintiff sued for $10 switching charge per car, and alleged that it was a reasonable charge for such service. The carrier did not offer testimony as to what charge would be reasonable for the service. The testimony of the plaintiff was uncontradicted in this respect, and did not present an issue of fact for determination, either by a jury or the court. It must be admitted on the state of the record in this appeal, that it was the duty of the carrier to perform the switching service for the plaintiff. It is admitted that the carrier did not perform such duty. The plaintiff performed the service, and the charge of $10 per car for switching service is not said to be unreasonable by the defendant. Therefore, the right of the plaintiff to recover, and the extent of the recovery, are questions of law. There is no issue of fact for the Interstate Commerce Commission to try in this case. If the duty be already fixed, and there is a breach, and the service be performed by the plaintiff, which ought to have been done by the defendant, and the charge is not said to be unreasonable by the defendant, the action is then for trial, in its entirety, by a court of competent jurisdiction.

The Mitchell Coal & Coke Company owned and operated mines served by a spur line from the main line of the Pennsylvania Railway Company. There were other coal companies engaged in mining coal near the Pennsylvania line, which were served by spur lines from the trunk line. The latter coal companies owned their engines, and delivered the cars of coal from the mouth of the mines to the station. The carrier allowed the coal companies about 25 cents per ton for the switching service. The Mitchell Coal Company learned of this practice, and purchased an engine and offered to switch its cars of coal from the mouth of the mine to the station for a like charge allowed to the other coal companies. The carrier refused to allow the Mitchell Coal Company a switching charge for the service it allowed to other coal companies, similarly situated in the same vicinity. The Mitchell Coal Company brought its action against the Pennsylvania Railway Company, in which it charged that the service afforded to it, as compared with that given to the other coal companies, was unreasonable. The case is styled Mitchell Coal Co. v. Penn. R. R. Co., reported in 230 U. S. 247. The court held that inasmuch as the rate from the station included a charge against the coal companies for transporting coal from the mouth of the mine to the station, it was the duty of the carrier to perform the service. The court said in disposing of this question:

"Inasmuch as this rate included the haul, the railroad was bound to transport the coal

from the mouth of the mines, and could use its own engines for that purpose, or it could employ the coal companies to render that service, paying them proper compensation therefor."

However, the court considered the question further, in view of the fact that the suit grew out of and was based upon the assumption that the service afforded the plaintiff was unreasonable, and said:

"In case any question arose as to the reasonableness of the practice, the limits within which the station rates should apply, or the reasonableness of the allowance paid those shippers who supplied motive power, the Commission alone could act."

A different question would be presented by this appeal, if the action was based upon the claim of unreasonable service if there was no fixed rate. The question would then be for the decision of the Interstate Commerce Commission as to the reasonableness of the charge. A different question from that presented by this appeal might be here, if the evidence of the defendant, or the entire evidence, had raised the question of the reasonableness or unreasonableness of the amount claimed by the plaintiff for the switching charge. Neither the answer of the defendant, nor the evidence, discloses want of jurisdiction in the court to try the questions that were involved.

The evidence offered in the trial of this cause does not show that the plaintiff was in possession of the property as lessee. Therefore, the defendant was not entitled to its claim for lease rentals against the plaintiff. The conclusions applied herein dispose of all questions presented by this appeal.

The judgment is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 12 C. J. p. 125 §181. (2) 12 C. J. p. 135 §199 (Anno). (3) 12 C. J. p. 121 §177 (Anno). (4) 12 C. J. p. 125 §181. (5) 4 C. J. p. 1130 §3122.